1

## SALE AND PURCHASE AGREEMENT
### For
### Construction of a Type A Structure
### At
### 417 River View Lane
### Melbourne Beach, Florida 32951

CONTRACT No: 8292016

This Sale and Purchase Agreement is made on this September 19, 2016 and entered into by and between:

| | |
|---|---|
| Company name | NexGen Framing Systems, LLC |
| Company address | 445 Stan Drive<br>Melbourne, Florida 32904 |
| Company registration | Florida |
| Represented by | Cliff Singleton |
| Title | Chairman |
| Telephone/Fax | (321)431-6536 |
| Email | Zcliff501@aol.com |

Hereinafter referred to as the **Seller**;

**And**

| | |
|---|---|
| Name | Stingl Family foundation |
| Address | 417 River View Lane<br>Melbourne Beach, Florida 32951 |
| Represented by | Dan Stingl |
| Title | Owner/Buyer |
| Telephone | 321 446-6662 |
| Email | danbeachhouse@yahoo.com |

Buyer initials _DMS_


EXHIBIT
A
Blumberg No. 5119

Seller Initials

EXHIBIT J

 BY NEXGEN FRAMING SYSTEMS, LLC

Hereinafter referred to as the **Buyer**

(Buyer and Seller hereinafter shall be referred to collectively as "Parties" or singularly as "Party").

Whereas, the parties mutually desire to execute this Sales and Purchase Agreement which shall be binding upon, and to the benefit of, the Parties, successors and assigns, in accordance with the jurisdictional law of the State of Florida, USA with the negotiated and fully executed contract with terms and provisions hereunder agreed upon.

<u>DEFINITIONS</u>

**Agreement** means this sale and purchase agreement for the residential structure described at Annex A

**Annex** means a series of documents marked Annex A through Annex G attached to this Agreement and which the Parties hereby agree and acknowledge as an integral part of this Agreement.

**Building Package** means a set of all components required to assemble the exterior walls, interior walls, floor trusses and roof trusses; components are produced, labelled and flat packed in containers or on a trailer for delivery to the location designated by the buyer.

**Change order** means a change directed by the buyer that is not included in the drawings, plans or design for the structure and for which there will be an additive cost to the buyer. Change orders will be reflected as amendments to the contract and will become effective upon signature by the buyer and seller and initial payment of at least twenty percent (20%) of the estimated cost of the change by the buyer.

**Drawings** means a set of written drawings showing architectural features of the structure that is being purchased. **Conceptual** drawings will provide illustrations of the structure, a one dimensional "footprint" with approximate dimensions and depictions of rooms and related features. Conceptual drawings are not intended for construction permitting purposes. **Engineering** drawings show architectural, structural and engineering details that have been certified and bears the stamp by a licensed engineer in the jurisdiction where the structure will be erected and can be used to obtain construction permits in the jurisdiction where the construction will be done.

**Energy Savings Guarantee** means a written guarantee of reduced energy costs provided by a third party for the structure when built in accordance with the specifications in the engineer drawings, based on normal and customary use and occupancy. The Energy Savings Guarantee will include a detailed energy analysis and an estimate of the monthly energy costs which, if exceeded under conditions of normal and customary use, will result in reimbursement to the buyer of the amount between the estimated energy costs and the actual energy cost for the first two years of occupancy.

**Type 1 Semi-finished Panel** means a panel that has been fully assembled and backed with one inch of 2 pound, high density Extruded Polystyrene (EPS) with ten (10) ounce fiberglass mesh inserted between the EPS and the panel assembly that is fused into a unitary panel structure when one half of the stud cavity is filled with closed cell polyurethane.

**Insulation** means high density extruded polystyrene (EPS) and closed cell and open cell polyurethane that are applied as specified in the engineering drawings to provide enhanced thermal resistance and reduced thermal conductivity for the structure being built.

Buyer initials  QMS                                                    Seller Initials

 BY NEXGEN FRAMING SYSTEMS, LLC

**Type A Structure** means a structure erected on a slab-on-grade foundation, or another foundation designated by the buyer, based on the conceptual and engineering drawings specified in the contract that consists of semi-finished insulated wall panels with a one inch panel of high density EPS backing and approximately one half of the stud cavities filled with closed cell polyurethane that is fused with the EPS backing, interior wall panels, roof panels, floor trusses, roof trusses, roof decking, roof cladding and exterior door and exterior window openings framed in.

## CLAUSE 1 - SCOPE OF THE CONTRACT

**1.1** The Parties hereby agree that the structure to be delivered is accurately described in the attached Annexes A through G to this contract and that seller has the capacity and capability to deliver and the Buyer has the full capability to purchase the structure described herein in accordance with the terms and conditions of this contract. Annex A provides a **Conceptual Drawing** of the structure to be delivered. <u>Engineering drawings showing architectural, structural and engineering details that have been certified and bears the stamp by a licensed engineer in the permitting jurisdiction</u> have been provided under separate cover and are incorporated by reference into this contract and provided in a digital medium with this contract. NexGen will provide all labor and materials for production, assembly, delivery to the site and erection of a <u>Type A Structure</u>.

1.2 In delivering a Type A structure NexGen Framing, LLC will provide all materials, labor and equipment to install a slab-on-grade foundation on a ready-for-construction site prepared by the buyer in compliance with the engineering drawings, produce all steel framed components and provide all labor, material and equipment to erect a steel framed Type A structure consisting semi-finished exterior wall panels and uninsulated interior wall structures, floor trusses, roof trusses, the roof system with 5/8 inch CDX plywood decking and all exterior door and window openings framed in.

1.3 In delivering a Type A structure NexGen **WILL NOT PROVIDE**:
    1.3.1  Phase 2 open cell polyurethane insulation
    1.3.2  Floor coverings or installation services for these components
    1.3.3  Painting or painting services for interior walls
    1.3.4  Electrical distribution systems or installation services for these components
    1.3.5  Lighting fixtures and components or installation services for these components
    1.3.6  Plumbing distribution systems or installation services for these components
    1.3.7 Plumbing fixtures and components or installation services for these components
    1.3.8 Heating and air conditioning systems or installation services for these components
    1.3.9 Cabinetry or installation services for these components
    1.3.10 Interior doors or installation services for these components
    1.3.11 Horizontal construction for site preparation other than the horizontal construction for the foundation
    1.3.12 Driveways, sidewalks or landscaping

## CLAUSE 2 –PRODUCT

2.1 NexGen Framing, LLC will deliver a Type A structure, as described in this contract. The product is a structure built in accordance with the conceptual drawings attached at Annex A to this contract and in full compliance with the material and structural specifications in the engineering drawings that have been reviewed and stamped by a licensed engineer in the permitting jurisdiction that have been provided to the buyer under separate cover and are

Buyer initials ___DMS___                                              Seller Initials ___



BY NEXGEN FRAMING SYSTEMS, LLC

incorporated by reference into this contract.  The delivered product consists of a concrete slab-on-grade foundation, a steel framed structure with Type 1 Semi-finished exterior wall panels, uninsulated interior wall panels, and all supporting structural components, floor trusses, roof trusses, 5/8 inch CDX plywood roof decking, and installed exterior door and exterior window openings framed in. The structure consisting of the components shown in Annex B are produced, assembled, delivered to the site and erected by NexGen Framing, LLC.

**CLAUSE 3 – CONSTRUCTION AND PAYMENT SCHEDULE –** The buyer has paid for, and received all conceptual drawings for this structure and made partial payment for production of all components required for this structure.

3.1 Event 0- Pre-contract review and determination of final conceptual plans for a Type A structure – As required by buyer - Done

3.2 Event 1 – Buyer Signs the bid and proposal sheet for a Type A structure makes payment of $2,500 for conceptual drawings - Done

3.3 Event 2 – Buyer approves conceptual plans and drawings, signs the contract and makes payment of eight percent (8%) of the contract price for a Type A structure in the amount of $14,220 USD for production of detailed engineering plans that are signed and stamped by the engineer of record –

3.4 Event 3 – Buyer applies for construction permits

3.5 Event 4 – Buyer makes payment of fifty percent (50%) of the contract value for a Type A structure in the amount of $83,602 USD. Production of components start -

3.6 Event 5– Buyer makes payment of ten percent (10%) of the contract value of the Type A structure upon completion of production of components in the amount of $16,720.

3.7 Event 6 – Buyer receives construction permits

3.8 Event 7 – Seller ships building components for a Type A structure to the construction site.

3.9 Event 8 – Start construction.

3.10 Event 9 – Pour the foundation

3.11 Event 10 – Buyer makes payment of eight percent (8%) of the contract value of the Type A structure in the amount of $13,376.

3.12 Event 11 – Erect walls, install roof trusses and roof decking

3.13 Event 12 – Buyer makes payment of eight percent (8%) of the contract value of the Type A structure in the amount of $13,376.

3.14 Event 13 – Installation of the interior walls

3.14 Event 13 – Buyer makes payment of seven percent (7%) of the contract value of the Type A structure in the amount of $11,704.

Buyer initials ___DMS___                                              Seller Initials ___

 *BY NEXGEN FRAMING SYSTEMS, LLC*

3.16 Event 15 – Seller installs fiber reinforced stuccos exterior wall cladding.

3.17 Event 16 – Buyer makes final payment of seven percent (7 %) of the remaining contract value of the Type A structure, including all changes, in the amount of $ 11,704 plus the cost of all unreimbursed changes, if any.

3.18 Event 17 – Seller delivers a Type A house.

### CLAUSE 4 – PRICE

4.1 This is a fixed price contract.  Changes that are beyond the scope of the initial contract will be priced and documented in a contract change order and upon agreement and acceptance by the buyer, will be added to the contract price for the structure being delivered. The buyer will make a payment of twenty percent (20%) of the estimated cost of the change order. The summarized payment schedule for the structure in this contract is shown at Clause 6 of this contract.  The contract price for the structure delivered in a Type A configuration is $167,204.20.

### CLAUSE 5 –MATERIAL SPECIFICATIONS

5.1 See Annex E for specifications for steel, Extruded Polystyrene (EPS), Closed Cell polyurethane, Open Cell polyurethane and Annex F for specifications of Fiber Reinforced Stucco exterior wall cladding and fiberglass mesh used in the construction of the structure represented in this contract.  Specifications for the products shown at Annex E and F that are used in the construction of the contracted structure are manufacturer's specifications and are the sole responsibility of the producer. NexGen Framing System, LLC makes no warranties for materials or products, either expressed or implied, beyond the warranties of specifications provided by the producers or suppliers.

### CLAUSE 6– PAYMENT

6.1 Payments for the Contract deliveries shall be paid by bank wire, check or cash in US Dollars unless otherwise agreed by the parties.

6.2 Payments shall be made on the following schedule:

| Payment Number | Event | Amount[1] |
|---|---|---|
| 1 | Production of engineer drawings (Paid) | - $2,500 |
| 2 | Contract deposit (Paid) | 8% of Type A contract value - $14,220 |
| 3 | For production of structural components | 50% of Type A contract value -$83,602 |
| 4 | Upon Completion of production | 10% of Type A contract value -$16,720 |
| 5 | Upon completion of foundation | 8% of Type A contract value -  $13,376 |
| 6 | Upon completion of roof decking | 8% of Type A contract value -  $13,376 Including all unpaid changes |
| 7 | Upon installation of interior walls | 7% of Type A contract value -   $11,704 |

Buyer initials  _DMS_

Seller Initials



BY NEXGEN FRAMING SYSTEMS, LLC

| 8 | Upon installation of exterior siding | 7% of Type A contract value - $11,705 |

**TOTAL CONTRACT VALUE FOR A TYPE A STRUCTURE** $167.204.20

[1] Amounts shown are rounded to the nearest dollar

**CLAUSE 7 – PROCEDURES**

7.1    The procedures for execution of this contract are as follows

7.1.1   Buyer agrees to an initial conceptual design.

7.1.2   Buyer and seller sign a proposal that is the first stage contract and pays $2,500 for initial drawings. Done

7.1.3 Buyer makes a payment of eight percent (8%) of the estimated contract value for final drawings.

7.1.4   Seller provides finalized conceptual drawings to the buyer for review and approval.

7.1.5   NexGen Framing produces detailed engineering drawings for review and approval by a licensed engineer suitable for obtaining a construction permit; Buyer applies for construction permits. Seller starts production of components.

7.1.6 NexGen produces the structural components for a Type A structure based on the approved engineering drawings.

7.1.7 Buyer receives permits from the permitting jurisdiction.

7.1.8 Site preparation to enable start of foundation work.

7.1.9 Seller issues Notice to Proceed (NTP) to subcontractors for foundation site preparation, underground plumbing and underground electric work.

7.1.10 Pour the foundation and ship all structural components to the job site.

7.1.11 Seller issues Notice to Procced to subcontractor to start erection of the structure.

7.1.12 Seller installs interior walls

7.1.13 Seller installs exterior wall cladding.

7.1.14 Seller delivers a Type A structure.

Buyer initials  ꓤMS

Seller Initials

 BY NEXGEN FRAMING SYSTEMS, LLC

**CLAUSE 8 - INSPECTION/QUALITY DETERMINATION**

8.1  The seller agrees that the buyer, upon coordination with the seller, may conduct, or cause an authorized agent to conduct technical inspections at any stage of production or construction.

8.2  Code compliance and compliance inspections by the construction permitting authorities in the jurisdiction where NexGen is performing work will be coordinated by NexGen with said authorities and NexGen shall be responsible for ensuring compliance with the approved engineering plans and drawings and local codes to ensure delivery of a structure that is fully compliant and in full accord with the engineering plans and local building codes.

**CLAUSE 9 – OWNERSHIP AND RISK**

9.1  Ownership of materials and risk will pass from NexGen (the Seller) to the Buyer upon receipt of the final payment and any necessary documentation to affirm conveyance of unencumbered ownership, free and clear of liens and encumbrances will be provided by the Seller.

**CLAUSE 10 – INSURANCE**

10.1 Insurance will be the responsibility of the party at risk.

10.2 Workman's compensation and liability insurance for NexGen employees will be provided by NexGen.

10.3 Workman's compensation and liability insurance for subcontractor employees will be provided by the subcontractor performing the work.

10.4 Builder's risk insurance during the period of construction will be the responsibility of the buyer.

**CLAUSE 11 – NON-PERFORMANCE**

11.1  Failure to deliver or take delivery - If the Buyer fails to take delivery of the structure delivered under the terms of the contract in a timely manner for any reason except seller's fundamental breach of contract, then the seller shall be entitled to enter a judgement and obtain a mechanic's lien on the property in question and to pursue all remedies available at law to obtain compensation for losses, damages and legal costs.  If the Seller fails to deliver the structure under the terms of the contract for any reason except buyer's fundamental breach of contract or a Force Majeure event, then the Buyer shall be entitled to compensation of not more than 10% (ten percent) of the defaulted value.

**CLAUSE 12- CLAIMS**

12.1  Any claims that either Party may have due to a Force Majeure occurrence must be submitted to the other Party within a period of two (2) months from the date of that occurrence.

12.2  Any and all claims asserted by the Parties to this agreement will be executed in writing and provide detailed information on the circumstances and conditions that give rise to the claim being asserted. Both Parties agree to acknowledge such claims by written acceptance thereof.

**CLAUSE 13 – DUTIES, TAXES, OBLIGATIONS**

13.1 The Seller shall pay all taxes and duties related to the performance of this Agreement for those products, tasks or functions performed by the seller in furtherance of this agreement.

Buyer initials ___DMS___                                              Seller Initials ___

8

 BY *NEXGEN FRAMING SYSTEMS, LLC*

13.2 The Buyer shall pay all taxes and duties related to the performance of tasks, duties and functions required to be performed by the buyer under this Agreement.

**CLAUSE 14 - LIABILITY EXEMPTIONS DUE TO FORCE MAJEURE**

14.1 All laws of the State of Florida for Force Majeure events and circumstances shall apply to this Agreement.

14.2 Neither of the Parties shall be responsible for full or partial non-performance of their obligations under the present Agreement, if such non-performance is a result of Force Majeure events, such as: fire, flood, adverse weather, strikes, war (announced and not-announced), disorder, perils of embargo, destruction of the materials, delays due to the breakdown of shipping, material defects, wreck, restrictions entered by the government authority/ies (including protectionism, quota introduction and price control) or any event, occurrence or circumstances beyond the Parties control raised after the conclusion of this Agreement.

14.3 If any of the above-mentioned events directly affect fulfillment of the obligations during the period determined by the present Agreement, the term for obligations fulfillment will increase accordingly to the duration of Force Majeure circumstances.

14.4 However, in case Force Majeure events exist for more than thirty (30) days, the Parties shall have right to cancel the present Agreement partially or completely, without prejudice to any sums owed by either Party to another Party for performance rendered hereunder.

14.5 Any party claiming excuse by reason of Force Majeure shall deliver prompt written notice to the other Party of the events or circumstances and the expected duration of the excuse. A certificate issued in original by a competent recognized authority shall be deemed as sufficient proof for the claim of Force Majeure and for its duration.

**CLAUSE 15 – BREACHES AND PENALTY**

15.1 Subject to clause 11 herein, in the event of failure by either of the Parties to comply with any of the obligations assumed under this Agreement, it shall entitle the other Party, without prejudice to any other recourses available to it, to consider such failure as breach of this Agreement and to terminate the same, or to unilaterally suspend its performance until such failure is corrected, and in both cases, may claim direct damages for the breach of this Agreement pursuant to Clause 11 of this contract.

15.2 After this Agreement has been signed and copies exchanged electronically or otherwise via courier service, any Party failing to follow the operational procedure shall be considered in breach of this Agreement. The defaulting party is liable for payment of penalty fees or contract adjustments in accordance with Clause 11 above, or as agreed upon by both Parties, as a form of compensation to the suffering party.

**CLAUSE 16 - APPLICABLE LAW - JURISDICTION**

16.1 This Agreement and any contractual obligations arising in connection with it shall be governed by and construed in accordance with the laws of the State of Florida, USA.

16.2 Jurisdiction for Arbitration of other proceedings arising under this Agreement shall be in Melbourne, Florida.

Buyer initials ___DMS___                                    Seller Initials ___



BY NEXGEN FRAMING SYSTEMS, LLC

**CLAUSE 17 - ARBITRATION**

17.1   All disputes arising in connection with this present Agreement shall be settled in an amicable way firstly within 5 days of occurrence. Should the Parties reach no agreement, then the case shall be brought for final settlement to an Arbitration Panel of 3 members under the rules of conciliation and arbitration of the American Arbitration Association (AAA).  The Panel will operate under the following guidelines:

> - The panels shall start and conclude deliberation in 30 days from the date of first sitting
>
> - The cost of Arbitration shall be borne by the liable Party
>
> - The panel's decision shall be final and binding on the Parties
>
> - Any dispute or claim arising out of or in connection with this contract shall be resolved by arbitration in accordance with the AAA Rules. The seat of arbitration shall be in Melbourne, Florida, USA. The language of the arbitration shall be English.

17.2   Each Party shall appoint one arbitrator who in turn will appoint a third arbitrator as Chairman. Nothing in this Agreement shall be construed to prevent any court having jurisdiction from issuing injunctions, attachment orders or orders for other similar relief in aid of any arbitration commenced by the arbitrator(s) and  may be entered in any court having jurisdiction hereof.

17.3   Neither Party shall fail to comply in a timely way with the obligations to be performed by that Party pursuant to this Agreement even though a dispute may have arisen and proceeded into arbitration.

17.4   Findings as assessed by the designated arbitrator will be final and binding on both Parties without any possibility of recourse.

**CLAUSE 18 - SPECIAL CONDITIONS**

18.1   Seller and Buyer each warrants that it has exerted and shall continue to exert its best efforts to avoid any action which might be detrimental to the other Party's interest in the negotiation, execution and performance of this Agreement.

18.2   The Parties hereby agree that any terms which are not specifically confirmed and agreed upon in this Agreement will be settled by the Parties in amicable and good faith negotiations and if unsuccessful will be subject to the provisions established in this Agreement for the adjudication and arbitration of such issues.

**19 – CONFIDENTIALITY/NON – DISCLOSURE**

19.1 The Parties recognize that the information in this contract is personal, private and proprietary information and all reasonable measures must be taken to safeguard the privacy interests of the Parties to this contract.  Accordingly, the parties agree to keep all information relating to this Agreement absolutely private and confidential. Particularly, any information given by one to the other with respect to these presents which is not the subject of general public knowledge, shall be received and held in confidence by the recipient subject to any governmental disclosure requirements, during and after the life of the contract.

Buyer initials ___ DMS                                              Seller Initials ___

 **BY NEXGEN FRAMING SYSTEMS, LLC**

19.2 This clause 19 includes, but is not limited to, the Buyer, the Seller, their agents, mandates, nominees, assignees, and all intermediaries that are party to this Agreement.

19.3 This Agreement shall be kept in the strictest confidence between them for five (5) years from the date hereof. This Agreement contains confidential, personal and proprietary information that is intended only for the seller and buyer. Accordingly, this agreement, as well as all information necessary to complete this agreement and the transaction contemplated by this agreement, shall not, without the express written permission of the seller and buyer, be distributed beyond the Parties and their respective banks and counsel.

## CLAUSE 20 – ASSIGNMENT/TRANSFERABILITY

20.1   Either Party may at any time assign this Agreement or its total or partial performance hereof to any other party which assumes the obligations under this Agreement of the assigning Party under the terms of the assignment. Formal notice of the assignment shall be rendered to the other Party.

20.2   The assignor Party must provide the address, and other details including financial capability to the non-assigning Party (for example if the Buyer wishes to assign then the Buyer must provide full details to the Seller or vice versa).  The assigning Party must have written consent of the non-assigning Party (i.e. the continuing party to this Agreement) and such consent shall not be unreasonably withheld, approving the new party and the assignment.

20.3   Neither Party is entitled to transfer their rights and/or obligations under this Agreement to a third party, except where the third party is an entity whose majority ownership is the same as the original ownership Agreement partner. In any case the transferring party will notify the other party in writing (including Email address, residential address and telephone numbers).

## CLAUSE 21 – WARRANTIES

21.1  The seller warrants that the products being delivered under this contract shall comply with the description contained in this contract. The workmanship and materials for the steel framed structure shall extend for ten years from the date of delivery. The Statement of Warranty for the NexGen Structure is attached at Annex D.

## CLAUSE 22– LIABIlITIES

22.1 Where not in contradiction with the above agreement seller or buyer shall not be liable for direct or indirect or consequential damages or specific performance except in cases specified in this contract.

## CLAUSE 23 – GENERAL

23.1   This Agreement contains the entire understanding between the Parties with respect to the transactions contemplated hereby and can only be amended by a written agreement. Any prior agreement, written or verbal is deemed merged herein and shall be superseded by this Agreement.

23.2   This Agreement may be executed simultaneously in two (2) or more counterparts, each of which shall be deemed to be an original.

23.3   The article and other headings in this Agreement are for convenience only and shall not be interpreted in any way to limit or change the subject matter of this Agreement.

Buyer initials _____          Seller Initials _____



BY *NEXGEN FRAMING SYSTEMS, LLC*

23.4   All appendices, annexes and supplements shall constitute an integral part of this Agreement.

23.5   With the exception of cases specifically mentioned in this Agreement, neither Party may be held liable for indirect limited losses resulting from non–performance of the obligations hereunder.

23.6   EDT (Electronic Document Transmission) shall be deemed to be valid and enforceable in respect of the provisions of this Agreement. Either Party shall be entitled to request and receive a hard copy of any previous electronically transmitted document.

23.7   Both Parties agree that the signed and sealed EDT copies of this Agreement are fully binding and enforceable.

23.8   Grammatical mistakes, typing errors, if any, shall not be regarded as contradictions.

23.9   Any information contained herein shall be kept highly confidential, and shall not be subsequently disclosed to third parties or reproduced in any way, except to third parties who are necessary to the implementation of this Agreement.

23.10   Should there be any discrepancy between English statements against any other form of statement, English statement shall prevail.

**CLAUSE 24- PARTIES LEGAL ADDRESSES FOR NOTICES**

24.1 This Contract, subsequent amendments and all notices shall be made to the addresses of the parties herein or as any Party may subsequently advise the other Party in writing.

**24.2 The Seller Details:**

| | |
|---|---|
| Company name | NexGen Framing, LLC |
| Company address | 445 Stan Drive Melbourne, Florida, 32904 |
| Company registration | Florida |
| Represented by | Cliff Singleton |
| Nationality | USA |
| Title | Chairman |
| Telephone | (321)431-6536 |
| Email | Zcliff501@aol.com |

Buyer initials  OMS

Seller Initials



**BY NEXGEN FRAMING SYSTEMS, LLC**

**24.3 The Buyer Details:**

| Name | ~~Stingl Family Foundation~~ *Daniel and Angela Stingl* |
|---|---|
| Address | 417 River View Lane<br>Melbourne Beach, Florida 32951 |
| Represented by | Dan Stingl |
| Title | Owner/buyer |
| Nationality | US |
| Telephone | 321 446-6662 |
| Email | danbeachhouse@yahoo.com |

**CLAUSE 25 – CONCLUSION**

25.1  Upon signature of this Agreement by each Party such Party shall deliver an electronically signed copy of this document to the other Party by Electronic Transmission (including Email) or by delivery in person or by Federal Express or similar International courier with return receipt requested. Both the courier transmitted copies and the EDT copies shall be considered "Original" copies for all purposes. Until the exchange of couriered copies, the Parties agree the electronically signed and stamped copies of this Agreement will be in full force and effect. The Parties hereby confirm and accept that this Agreement sent by facsimile or Email or by any similar programs **EDT (Electronic Documents Transmissions)** shall be legal and binding.

**IN WITNESS WHEREOF** the Parties hereto have set their hands and seal the day and the year set out in this Agreement.

_9/19_ , 2016

**AS THE SELLER:**
**NexGen Framing Systems, LLC**
**Represented By:  Z. Clifton Singleton**

(Signature)

Buyer initials _DMS_

_9/19_ , 2016

**AS THE BUYER:**
**Stingl Family Foundation**
Represented By: ~~Dan~~/Stingl

(Signature)

Seller Initials