ORDERED.

Dated:  March 31, 2021

_____
Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| Zonnie Clifton Singleton, Jr., | ) Case No. 6:19-bk-02708-LVV |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| Alliant Tax Credit VIII and Alliant Tax Credit Fund VIII, Ltd., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Adversary No. 6:20-ap-00012-LVV |
| | ) |
| Zonnie Clifton Singleton, Jr., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiffs, Alliant Tax Credit VIII and Alliant Tax Credit Fund VIII, Ltd. ("Plaintiffs" or collectively "Alliant"), filed this adversary proceeding seeking to deny Zonnie Clifton Singleton, Jr. ("Debtor" or "Defendant"), a discharge under §§ 727(a)(2)(A) and (a)(4) of the Bankruptcy Code.[1] First, under § 727(a)(2)(A), Plaintiffs argue the Debtor deposited checks into his wife's

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq*.

business bank account or transferred other assets with the intent to hinder, delay or defraud a creditor—Alliant. Second, under § 727(a)(4), Plaintiffs argue the Debtor knowingly and fraudulently made false oaths on his bankruptcy schedules, made false oaths at Bankruptcy Rule 2004 examinations, and withheld from the Chapter 7 Trustee documents relating to his property or financial affairs. Debtor, who is *pro se* in this proceeding, denies the allegations. After considering the testimony and evidence presented at trial,[2] the Court finds the Debtor is entitled to a discharge.

For most his life, the Debtor has worked in the building industry.[3] His spouse, Rita Singleton, has worked alongside him on projects for 50 years.[4] Prior to filing this bankruptcy case on April 20, 2019 (the "Petition Date"), the Debtor, or his companies, had been developing large scale low-income or retirement apartment complexes.[5] In 2002, the Debtor had a contractual dispute with Alliant, one of the capital investors.[6] The Debtor sued Alliant in the Florida State Court,[7] and Alliant sought counterclaims against the Debtor.[8] After ten years of litigation, the Florida State Court entered judgment in favor of Alliant for approximately $3.5 million (the "Judgment").[9]

During the Florida State Court litigation, the Debtor's son, who is a Florida licensed contractor,[10] started a limited liability company called Nexgen Framing System LLC ("Next gen").[11] Nexgen is a steel structural and manufacturing framing business.[12] When the Debtor had

---

[2] A trial was held on September 24, 2020.
[3] 9/24/20 Trial Tr. p.108.
[4] 9/24/20 Trial Tr. p. 58.
[5] 9/24/20 Trial Tr. p.109.
[6] Exh. 39. Debtor Dep. Tr. pp. 7-8.  Exh. 5.
[7] Exh. 5. The Florida State Court litigation is *Singleton v. Alliant Capital Ltd.*, Case No. 05-2002-CA-8851 (Fla. Cir. Ct. 2002), filed in Brevard County, Florida.
[8] Exh. 39. Debtor Dep. Tr. p. 7.
[9] Exh. 5. On January 28, 2013,the Florida State Court entered a judgment against the Debtor for $3,569.043.
[10] 9/24/20 Trial Tr. p.110.
[11] 9/24/20 Trial Tr. p.108.
[12] 9/24/20 Trial Tr. p.111.

difficulties developing new projects, he started working with his son at Nexgen.[13] Although his son owned Nexgen,[14] the Debtor began managing daily operations, which allowed his son to focus primarily on his other career.[15] The Debtor took a salary at times with available cash,[16] and sometimes referred to himself as "managing member"[17] or "chairman"[18] trying to bolster the company's (or his) reputation.[19] Together, the Debtor and his son, developed a patent for a structural insulated panel framing system (the "Patent"), that Nexgen later obtained.[20]

Other family members also worked at Nexgen. Mrs. Singleton worked in sales and customer service.[21] Their daughter, for a time, ran errands and provided data entry.[22] Their grandson and a nephew worked at Nexgen as well.[23] An accounting firm, Barnes and Company, provided Nexgen with accounting services,[24] but the Debtor did maintain Nexgen's check register.[25]

In 2010, David Luce invested funds with the company and acquired a 50% interest in Nexgen.[26] At that time, Mr. Luce also acquired the Patent from the Debtor, the Debtor's son, and Nexgen.[27] Due to his other career,[28] the Debtor's son then transferred his ownership interest to

---

[13] 9/24/20 Trial Tr. p.108.
[14] Exh. 39. Debtor Dep. Tr. p. 49.
[15] 9/24/20 Trial Tr. p.108.
[16] 9/24/20 Trial Tr. p.123.
[17] Exh. 11.
[18] Exh. 12.
[19] 9/24/20 Trial Tr. pp. 117-119.
[20] Exh. 17. 9/24/20 Trial Tr. p.111-12.
[21] 9/24/20 Trial Tr. p. 62.
[22] 9/24/20 Trial Tr. pp. 40-41.
[23] 9/24/20 Trial Tr. p. 41.
[24] 9/24/20 Trial Tr. p. 41.
[25] 9/24/20 Trial Tr. p. 139.
[26] Exh. 14.
[27] Exh. 14, 15, 16 and 17. The assignment appears to have been recorded with the United States Patent and Trademark Office on January 10, 2019.
[28] Exh. 39. Debtor Dep. Tr. p. 62.

his mom, Mrs. Singleton, around 2012.[29] Mrs. Singleton continued to work at Nexgen, and currently goes to the office 2-3 times a week.[30]

After Alliant obtained the Judgment in 2013, Alliant began collection attempts against the Debtor. Alliant garnished the Debtor's bank account, and after the garnishment, the Debtor ceased maintaining a personal bank account.[31] On April 29, 2015, Alliant took the Debtor's deposition under oath in aid of execution of the Judgment.[32]

Several years later, the Debtor filed this Chapter 7 bankruptcy case. Richard B. Webber was appointed Chapter 7 Trustee ("Trustee"). On July 22, 2019, Alliant examined the Debtor under oath under Bankruptcy Rule 2004 regarding his financial affairs ("Rule 2004 Exam").[33] On September 9, 2020, Trustee's counsel also examined the Debtor under oath under Bankruptcy Rule 2004. The Trustee, however, has not joined in this objection.

Alliant objects to the Debtor's bankruptcy discharge under §§ 727(a)(4) and 727(a)(2)(A),(B) of the Bankruptcy Code. "The Bankruptcy Code favors discharge of an honest debtor's obligations." *In re Jennings*, 533 F.3d 1333, 1338 (11th Cir. 2008). Generally, objections to discharge are construed liberally for the honest debtor and strictly against the objecting creditor. *Id. See also In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009). To prevail, Plaintiffs must prove their objection by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

---

[29] 9/24/20 Trial Tr. p. 75. Exh. 8.
[30] 9/24/20 Trial Tr. p. 57.
[31] 9/24/20 Trial Tr. p.116.
[32] Exh. 10.
[33] Exh. 39. Bankruptcy Rule 2004 allows any party in interest to examine any entity on matters that relate to the acts, conduct, property, liabilities and financial condition of the debtor, affect the administration of the debtor's estate, or the debtor's right to a discharge.

### 11 U.S.C. § 727(a)(4)(A)
### *False oath or account*

Section 727(a)(4)(A) of the Bankruptcy Code allows the court to deny the debtor a discharge when the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. 727(a)(4)(A). To justify denial of the debtor's discharge for a false oath, the false oath must be "fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *In re Daniel*, 613 B.R. 374, 381 (Bankr. M.D. Fla. 2020); *In re Wright*, 618 B.R. 569, 575 (Bankr. M.D. Fla. 2020). The debtor's fraudulent intent is typically inferred by examining the totality of circumstances surrounding the debtor's bankruptcy case. *Wright*, 618 B.R. at 575-76. An oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorfield (In re Chalik)*, 784 B.R. 616, 618 (11th Cir. 1984); *Daniel*, 613 B.R. at 381. Here, the Court concludes no materially false oaths exist which justify denial of the Debtor's discharge.

*<u>Nexgen</u>*.   Alliant's primary argument is that the Debtor owns and controls Nexgen, and not Mrs. Singleton. Alliant alleges the Debtor made a false oath by failing to list his "equitable" interest in Nexgen on his bankruptcy schedules,[34] made false oaths during his Rule 2004 Exam regarding his interest and involvement and Mrs. Singleton's involvement with Nexgen,[35] and made a false oath during the Trustee's Rule 2004 examination that Nexgen had closed August 2020.

---

[34] 9/24/20 Trial Tr. pp.162-63.
[35] Exh. 1.

Here, the Court finds Mrs. Singleton's testimony credible. She testified that she owns Nexgen with David Luce.[36] She has actively worked at Nexgen for years, and still does. And although Mrs. Singleton had difficulty testifying about certain transactions listed on Nexgen's financial records, that is not dispositive of her ownership interest. The Court simply did not find Alliant's evidence of the Debtor's alleged "equitable" ownership interest persuasive.[37] And Section 727 only allows creditors the ability to challenge discharges if a debtor "hides, conceals or lies about assets *already* included as property of the estate," and not for hypothetical assets which may be brought into the estate under other theories, such as alter ego theories. *In re Patel*, Case No. 6:18-bk-00036-KSJ, 2019 WL 10734051, *3 (Bankr. M.D. Fla. Aug. 8. 2019). The Court finds on the Petition Date, the Debtor did not have an ownership or "equitable" interest in Nexgen which required disclosure on his bankruptcy schedules.

Alliant failed to demonstrate false oaths made by the Debtor during his Rule 2004 Exam. The Debtor has consistently denied any ownership of Nexgen. Both the Debtor and Mrs. Singleton testified they work at Nexgen. The Court reviewed the Rule 2004 Exam transcript,[38] and found no fraudulent and material statements regarding the Debtor's interest and involvement in Nexgen, or Mrs. Singleton's involvement with Nexgen, as generally alleged by Alliant.

And Alliant did not demonstrate the Debtor made a false oath during the Trustee's Rule 2004 examination regarding Nexgen's closure. No transcript of the Trustee's Rule 2004 examination is before this Court. The Court has no evidence the Debtor was sworn under oath and what he stated at the examination. Instead, Alliant relies on Trustee's counsel, who testified

---

[36] 9/24/20 Trial Tr. p. 64.
[37] For example, Alliant relies on Nexgen's 2011 annual report which lists the Debtor as a managing member in error (Exh. 7), a single Nexgen sales contract with a customer which lists the Debtor as "chairman" (Exh. 12), and the Debtor's LinkedIn social media profile (Exh. 11), to demonstrate the Debtor has an ownership interest in Nexgen, a company in existence for over ten years.
[38] Exh. 39.

she *believed* the Debtor stated at his examination that Nexgen stopped operating in August 2020.[39]

At trial, Mrs. Singleton testified due to COVID-19, Nexgen was in the process of dissolving and had ceased hiring employees back to work in June 2020.[40] A process server, who attempted to serve a witness at Nexgen's office on multiple occasions, described the office as "always pretty empty" or did "not [have] a lot of activity" in August and September 2020.[41] Because the Court does not have a transcript of what the Debtor said and the evidence demonstrates Nexgen appeared to be in the process of closing around August 2020, Alliant failed to demonstrate the Debtor made a fraudulent and material false oath as to the closing of Nexgen.

***David Douglas Debt, Lexington Park and Saddlebrook Projects.*** Alliant next argues the Debtor made a false oath by filing an addendum to Bankruptcy Schedule F which discloses a $2 million promissory note to David Douglas,[42] and by failing to disclose during his 2004 Exam that he still had ownership interests in entities until 2016, which developed the Lexington Park and Saddlebrook Apartment projects.[43] A little background is needed.

In the 2000s, the Debtor and his entities, started developing projects referred to as Lexington Park and Saddlebrook Apartments.[44] David Douglas was the Debtor's business partner for those projects.[45] Because Mr. Douglas funded the projects and the Debtor could not pay his portion, the Debtor verbally agreed to turn over management of the projects to Mr.

---

[39] 9/24/20 Trial Tr. p. 158.
[40] 9/24/20 Trial Tr. p. 58.
[41] 9/24/20 Trial Tr. p. 38.
[42] Doc. No. 51 in Case No. 6:19-bk-02708-LVV.
[43] During trial, Alliant referred to statements made by the Debtor during his April 2015 deposition in the Florida State Court litigation. Exh. 10. Because such statements were not made in or in connection with this case, Alliant failed to meet its burden to the extent it argues the Debtor made a false oath during his April 2015 deposition.
[44] 9/24/20 Trial Tr. pp. 16-17.
[45] 9/24/20 Trial Tr. p. 17.

Douglas, who completed them.[46] In March 2015, the Debtor signed a $2 million promissory note in favor of Mr. Douglas to document the amounts owed.[47] In December 2016, the Debtor transferred all his interests in the projects to Mr. Douglas,[48] and the outstanding $2 million principal of promissory note was *reduced*.[49] Mr. Douglas, *in his view*, believed the $2 million promissory note had been satisfied with the December 2016 transfer.[50] No written satisfaction of the $2 million promissory note is before the Court.

Alliant argues the Debtor made a false oath when he filed an addendum to Bankruptcy Schedule F to disclose the $2 million promissory note to Mr. Douglas when, according to Mr. Douglas, the debt had been satisfied in December 2016. Alliant, however, failed to demonstrate that the statement is incorrect or fraudulent. The purchase agreements signed in 2016 refer to a reduction of the promissory note, not satisfaction. No written satisfaction is before this Court. Alliant failed to demonstrate the Debtor knowingly and fraudulently made a false oath or account by filing an addendum to Bankruptcy Schedule F which disclosed the $2 million promissory note to David Douglas.

Alliant also contends the Debtor made a false oath during the 2004 Exam by failing to disclose that until 2016, he still had ownership interests in the entities which developed the Lexington Park and Saddlebrook Apartment projects. At trial, the Debtor explained that during the 2004 Exam he was discussing his management interest under the verbal agreement with Mr. Douglas and under the agreement, he did not believe he had any interest in the projects until he paid Mr. Douglas.[51]

---

[46] 9/24/20 Trial Tr. pp. 131, 133.
[47] Exh. 21, Exh. A Promissory Note.
[48] Exh. 25, 26, 27 and 28.
[49] Exh. 21, 22, 23 and 26 at ¶ 2.
[50] 9/24/20 Trial Tr. p. 18.
[51] 9/24/20 Trial Tr. pp. 133-135.

Having reviewed the Rule 2004 Exam transcript,[52] the Court finds the Debtor did not knowingly and fraudulently make a false oath. During the 2004 Exam, Alliant provided the Debtor with documents which indicated until 2016, he still held ownership interests in the entities.[53] The Debtor explained that he did not know he still owned the entities as he no longer operated either project.[54] The Debtor clarified that 20 years ago he had divested his managing or operating interest of the projects entirely to Mr. Douglas, but "didn't change any documents."[55] Alliant failed to demonstrate the Debtor knowingly and fraudulently made a false oath or account by failing to disclose that until 2016, he still had ownership interests in the entities which developed the Lexington Park and Saddlebrook Apartment projects

***Debtor and Spouse's Income***.  Schedule I required the Debtor to estimate as of the Petition Date, his income and the income of his non-filing spouse, Mrs. Singleton.[56] Debtor's Bankruptcy Schedule I provided the Debtor received monthly income of $433.33 from Nexgen and $1,014 from social security, and Mrs. Singleton received monthly income of $1,500 from Nexgen and $498 from social security. Alliant contends Nexgen's financial records demonstrate the Debtor and Mrs. Singleton received income not disclosed. Alliant primarily relies on Nexgen's yearly balance sheets, which stated Mrs. Singleton received $6,444 of member draws in 2018, a check dated January 2, 2019 payable to Mrs. Singleton for $12,000, Nexgen's 2015-2018 federal income tax returns, and Nexgen's 2018 transaction list.

Mrs. Singleton credibly testified that she did not receive more than $500 a week from Nexgen,[57] and often provided the company with money to operate.[58] She denied receiving draws

---

[52] Exh. 39.
[53] Exh. 39. Debtor Dep. Tr. pp. 22-23, 33-34.
[54] Exh. 39. Debtor Dep. Tr. pp. 22-23, 34.
[55] Exh. 39. Debtor Dep. Tr. pp. 33-34.
[56] Exh. 2, Schedule I.
[57] 9/24/20 Trial Tr. p. 63.
[58] 9/24/20 Trial Tr. pp. 59, 61.

from Nexgen, and relied on Nexgen's accountant or the Debtor to explain Nexgen's financial transactions.[59] The Debtor testified that he could not explain why the transaction list provided draws to Mrs. Singleton,[60] however, he did note that the $12,000 check dated January 2, 2019 had "Replace Loan" in the memo line, which indicated it is a loan repayment, and not a draw as provided on the transaction list.[61] The Debtor also explained Nexgen's accountant prepared transaction list with the tax returns.[62] The Debtor credibly explained how various expenses listed on the Nexgen's financial records were related to the business, and not to him or his wife, personally.[63]

Alliant failed to demonstrate that the Debtor, with fraudulent intent, understated his and his spouse's income on Bankruptcy Schedule I. Bankruptcy Schedule I required disclosure of estimated monthly income as of the Petition Date. Mrs. Singleton's total draws of $6,444 in 2018, which is the year prior to the Petition Date, is consistent (or less) than what is disclosed on Bankruptcy Schedule I. Nexgen's 2018 federal income tax return provided that the company operated at a loss.[64] The $12,000 check dated January 2, 2019 to Mrs. Singleton is a repayment of a loan, not income. And Alliant failed to demonstrate how any of the expenses listed on Nexgen's financial records could be traced to payment of the Debtor or Mrs. Singleton's personal expenses, or their income. The Debtor may have had access to Nexgen's bank account debit card, but so did other employees at Nexgen.[65] The Court finds the Debtor and Mrs. Singleton's explanations credible. The Debtor reported what he believed was his and Mrs.

---

[59] 9/24/20 Trial Tr. pp. 67,69-71.
[60] 9/24/20 Trial Tr. p. 140.
[61] 9/24/20 Trial Tr. pp. 122, 144.
[62] 9/24/20 Trial Tr. p. 120.
[63] 9/24/20 Trial Tr. pp. 145-150.
[64] Exh. 31.
[65] 9/24/20 Trial Tr. p. 46.

Singleton's income on Bankruptcy Schedule I. The Debtor did not knowingly and fraudulently make a false oath by failing to list income on Bankruptcy Schedule I.

Alliant failed to demonstrate by a preponderance of the evidence the Debtor knowingly and fraudulently made a false oath in connection with this bankruptcy case. No reason exists to deny the Debtor a discharge under § 727(a)(4)(A) of the Bankruptcy Code.

### *11 U.S.C. § 727(a)(4)(D)*
### *Withholding recorded information*

Section 727(a)(4)(D) of the Bankruptcy Code allows the court to deny the debtor a discharge when the debtor "withheld from an officer of the estate entitled to possession under this title, any recorded information… relating to the debtor's property or financial affairs." 11 U.S.C. 727(a)(4)(D). Although not alleged in the complaint, Alliant argued at trial that the Debtor withheld documents related to Nexgen which the Trustee requested under his Notice of 2004 Examination of the Debtor.[66]

The Trustee's Notice of 2004 Examination of the Debtor requested that the Debtor produce all documents relating to any entities the Debtor holds an *ownership* interest and all documents relating to the change or transfer of ownership for any entity the Debtor has been affiliated.[67] Trustee's counsel testified that the Debtor produced documents, such as personal tax returns and personal pay stubs, but did not describe what documents, if any, the Debtor failed to produce responsive to the request.[68] The Trustee has not filed a motion to compel production against the Debtor in the bankruptcy case, and has not joined Alliant in this proceeding. And Alliant has not shown the Debtor ever had an ownership interest in Nexgen, or that the Trustee specifically requested Nexgen documents from the Debtor. Because the record does not reflect

---

[66] 9/24/20 Trial Tr. p. 172.
[67] Exh. 41 at II, ¶¶ 6,7.
[68] 9/24/20 Trial Tr. p. 157-58.

what documents, if any, the Debtor has withheld from the Trustee, Alliant did not demonstrate the Debtor withheld from the Trustee any recorded information relating to the Debtor's property or financial affairs. No reason exists to deny the Debtor a discharge under § 727(a)(4)(D) of the Bankruptcy Code.

## 11 U.S.C. § 727(a)(2)(A)
### *Transfers with intent to hinder, delay, or defraud a creditor*

Section 727(a)(2)(A) of the Bankruptcy Code allows the court to deny the debtor a discharge when the debtor "with intent to hinder, delay or defraud a creditor… has transferred, removed, destroyed, mutilated, or concealed… (A) property of the debtor, within one year before the date of the filing of the petition...." 11 U.S.C. 727(a)(2)(A). Under § 727(a)(2)(A), Plaintiff must establish: "(1) that the act complained of was done within one year prior to the date the petition was filed, (2) with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted of transferring, removing, destroying, or concealing any of the debtor's property." *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008). A debtor's intent to hinder, delay or defraud his creditors may be established by circumstantial evidence or inferred from the debtor's course of conduct. *Id*; *In re Wright*, 618 B.R. 569, 583 (Bankr. M.D. Fla. 2020). If the Plaintiff meets this burden, the Debtor must then provide the Court with enough credible evidence to dissuade the Court from exercising its jurisdiction to deny the debtor a discharge. *Jennings,* 533 F.3d at 1339.

At trial, Alliant identified several transfers or acts by the Debtor which it argues the Debtor committed with actual intent to hinder, delay or defraud a creditor—Alliant. Only two of these acts, however, occurred within one year prior to the Petition Date. Two checks payable to the Debtor were deposited into Nexgen's bank account. Alliant argues the Debtor, or someone on

his behalf, deposited the checks into Nexgen's bank account attempting to hinder, delay or defraud Alliant.

On July 11, 2018, a $254 check from Mr. and Mrs. Dinome which had been payable to the Debtor with "Daytona" written in the memo was deposited into Nexgen's bank account.[69] Nexgen's general ledger also provided a $655 debit on July 31, 2018, with a description of Daytona International Speedway under entertainment.[70] The Debtor and Mrs. Singleton testified Nexgen had customers in town, and as entertainment, they took them to the Daytona International Speedway.[71] The Debtor could not recall why the Dinomes issued a check payable to him, but he did recall they attended the trip with other Nexgen customers.[72] The Court finds the Debtor and Mrs. Singleton's testimony credible. Here, Alliant failed to demonstrate the Debtor, or someone on his behalf, deposited the check into Nexgen's bank account with actual intent to hinder, delay or defraud Alliant. The Debtor provided evidence which demonstrates the check issued by the Dinomes and deposited into Nexgen's bank account related to a Nexgen business event.

On August 27, 2018, the FTC Refund Administrator issued a $74.30 check payable to the Debtor and Morts Nuts which got deposited into Nexgen's bank account.[73] The Debtor testified that Morts Nuts is a business he owned years ago, and because he did not have a bank account in his name (and presumably Morts Nuts), the check was deposited into Nexgen's bank account.[74] The Debtor testified he no longer had a bank account due to Alliant's garnishment. So, Alliant appears to have finally met its burden under Section 727(a)(2)(A). Within one year of the

---

[69] Exh. 32.
[70] Exh. 40, Nexgen General Ledger at p. 56.
[71] 9/24/20 Trial Tr. pp. 90, 142, 145.
[72] 9/24/20 Trial Tr. pp. 142, 145.
[73] Exh. 32.
[74] 9/24/20 Trial Tr. pp. 143.

Petition Date, the Debtor made a single deposit into Nexgen's bank account for less than $75, a *de minimis* amount, to hinder a potential garnishment by Alliant.

Courts, however, recognize that "[t]he reasons for denying a discharge… must be real and substantial, not merely technical and conjectural." *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994)(quoting *In re Tully*, 818 F.2d 106,110 (1st Cir. 1987) and *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir. 1934); *In re Delgado*, Case No. 9:18-bk-01732-FMD, 2020 WL 4005786, *14 (Bankr. M.D. Fla. July 14, 2020). Here, Alliant has established a transaction satisfying Section 727(a)(2)(A) due to a technicality—a *de minimis* transfer made by the Debtor. And given the amount at issue, the Court doubts whether the Debtor really intended to hinder, delay, or defraud Alliant by a $75 deposit. "Even when grounds exist for denying a discharge, the language of §727(a) vests bankruptcy courts with the discretion to grant a discharge." *In re Wright*, 618 B.R. 569,584 (Bankr. M.D. Fla. 2020). Because the transfer is *de minimis* and Alliant prevails on a technicality, the Court will use its discretion and allow the Debtor a discharge under Section 727(a)(2)(A).

## Conclusion

The Court finds the Plaintiffs did not prove under 11 U.S.C. § 727(a)(4)(A) that the Debtor made a false oath by failing to list his "equitable" interest in Nexgen on his bankruptcy schedules, by failing to disclose during a Bankruptcy Rule 2004 examination his interest and involvement or Mrs. Singleton's involvement in Nexgen, or by allegedly disclosing during a Bankruptcy Rule 2004 examination that Nexgen had closed August 2020. The Court finds the Plaintiffs did not prove under 11 U.S.C. § 727(a)(4)(D) the Debtor withheld documents from the Trustee which related to the Debtor's property or financial affairs. The Court finds the Plaintiffs did not prove under 11 U.S.C. § 727(a)(2)(A) the Debtor, or someone on his behalf, deposited

the $254 check issued by Mr. and Mrs. Dinome into Nexgen's bank account with actual intent to hinder, delay or defraud Alliant. And although the Court finds the Plaintiffs technically met their burden under 11 U.S.C. § 727(a)(2)(A), that the Debtor, or someone on his behalf, deposited the $75 check issued by FTC Refund Administrator into Nexgen's bank account with actual intent to hinder, delay or defraud Alliant, the Court will use its discretion to grant the Debtor a discharge. A separate Final Judgment consistent with this Memorandum Opinion will be entered in favor of Debtor on all counts of the complaint, and against the Plaintiffs. The Debtor is entitled to a discharge.